IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

      Plaintiff,

v.                                            Case No. 3:10cv378/MCR/CJK

WEST CUSTOMER MANAGEMENT
GROUP, LLC,

      Defendant.
_____/

## ORDER

Plaintiff Equal Employment Opportunity Commission ("EEOC") has filed suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, as amended, *see* 42 U.S.C. § 1981a, on behalf of Derrick Roberts, who claims that Defendant West Customer Management Group, LLC ("West") engaged in employment discrimination by refusing to hire him because of his national origin.  *See* 42 U.S.C. § 2000e-2(a)(1) (proscribing, in relevant part, discrimination on grounds of national origin). Pending before the court is the EEOC's motion for partial summary judgment on West's first affirmative defense (doc. 100), and West's motion for summary judgment against the EEOC (doc. 110).  Both motions are opposed.  Also pending are motions by both parties to strike declarations and expert testimony and West's objections to the EEOC's evidence in support of its opposition to summary judgment (*see* docs. 105, 111, 123, 125, 128). Having fully considered the matter, the court denies the motion for summary judgment and motion for partial summary judgment because genuine issues of material fact exist on the record before the court.  The remaining objections and motions to strike are therefore either moot or better addressed at the pretrial conference.

**Background**[1]

This suit arises out of the claim of Plaintiff Derrick Roberts that in 2008, he was rejected for employment as a Customer Service Representative ("CSR") with West because of national origin discrimination.  The undisputed facts are as follows.  Roberts was born in Jamaica and graduated from high school there.  He moved to the United States in 1989 and became a United States citizen in 1999.  His first and only language is English, but he speaks with an accent.  Prior to moving to the United States, Roberts worked for 11 years as a civilian employee for the United States military at Guantanamo Bay, Cuba, as a mechanic and in a laundromat for a short time, making change and giving out soap.  After moving to Florida in 1989, Roberts was employed as a mechanic from 1990 until 2001, and from 2003 through 2004.  He also worked for the Escambia County Area Transit from October 2004 until 2006, when he injured his back on the job.  Roberts testified that this resulted in a permanent medical restriction prohibiting him from lifting more than 10 pounds.[2]  In September 2008, Roberts completed a four-month course in information technology and received an information technology certification.

West provides customer service to corporate clients and employs customer service representatives to resolve by telephone billing questions and technical repair issues for customers of West's clients.  The successful candidate for a CSR position must satisfactorily complete an online computer skills assessment test and must have a high school diploma or GED, previous customer service experience, familiarity with a computer keyboard and mouse, a flexible schedule, and the ability to communicate using a clear, distinct voice.  On November 18, 2008, Roberts completed an online application for a CRS position and a computer skills assessment test.  He was interviewed the following day, November 19, 2008, by Employment Specialist Steven Henry, who asked questions about

---

[1] For the limited purposes of this summary judgment proceeding, the court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," which in this case is the plaintiff.  *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted).  The court is mindful that "what is considered to be the facts at the summary judgment stage may not turn out to be the actual facts if the case goes to trial."  *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

[2] EEOC contends this injury prevents Roberts from working as a mechanic, and West disputes this fact.  This dispute is not material to the outcome of the summary judgment motions.

his experience with computers[3] and customers, specifically inquiring about how he had dealt with customers in particular instances in the past.  During the interview, Henry asked Roberts a series of prepared questions and took notes on his answers.  In question 3B, Henry asked Roberts to describe how he had dealt with a challenging customer situation in the past.  According to Henry's notes, Roberts recalled a time when he was working as a mechanic and had diagnosed a mechanical problem but the customer disagreed with his conclusion and thought the problem was something else.  Henry recorded that Roberts said he told the customer he could only fix what he sees, and "if someone else thinks it is something else, let them fix it."  Henry viewed this as rude.  Roberts denied answering in this manner and said the notes did not accurately reflect what he had said.  According to Roberts, he recalled answering simply that the customer said her dad thought something else was wrong, but Roberts replied he had to fix the car according to his own diagnostics, and she ended up allowing him to fix it.  Roberts was never asked what country he was from and he did not tell Henry he was Jamaican, although it is indicated on his high school diploma, which Henry reviewed because it was a job requirement to have a high school diploma.  Roberts said Henry never asked him to repeat his answers.  At the end of the interview, Roberts said that a woman asked him some of the same questions relating to computers.  Then, according to Roberts, Henry informed him that he did not have the requisite computer skills and told him he had "a deep accent." (Doc. 100-3, at 13; Roberts Depo. at 52).  Roberts also said Henry told him he was worried that Roberts would upset an angry customer.  Later in his deposition testimony, Roberts stated he believed West refused to hire him because Henry had told him that his "thick accent" "would make matters worse to a customer" and that he did not have the requisite computer skills. (Doc. 100-3, at 25).  Roberts asserts that no one had ever previously told him they could not understand him.

According to Henry, he had difficulty understanding Roberts and had to ask some

---

[3] Henry inquired about Roberts's computer skills, specifically his familiarity with the computer programs Internet Explorer, Microsoft Word, and Excel.  Roberts testified by deposition that he explained he was still learning but that he used Internet Explorer for checking email and reading the paper, and that his experience with Word included typing letters and accounting coursework discussion questions; and he knew Excel was used for creating spreadsheets.

questions several times before understanding Roberts's response.[4]  Henry testified that the ability to communicate clearly and be understood were important considerations for the hiring decision, as well as the answer to question 3B, illustrating rudeness to a customer and weak computer skills.  Because of his difficulty understanding Roberts, Henry at some point asked a nearby co-worker, Pamela Thomas, to listen to the interview to hear if she had difficulty understanding Roberts.  She testified by deposition that she tried to listen and could hear that Roberts was talking, but it was difficult for her to hear him well enough to understand Roberts during the interview.  Henry testified that when he concluded asking Roberts the prepared questions, he advised Employment Supervisor Andreina Fowler that he had a gentleman whom he was having difficulty understanding, and he asked for her opinion on the matter.  Fowler testified that this was unusual, but she then asked Roberts some questions and agreed Roberts was difficult to understand and had difficulty communicating.  Fowler also testified by deposition that, upon reviewing Roberts's answers regarding customer service and computers, she felt he was not a qualified applicant. Henry testified that he may have commented on Roberts's accent at the end when he informed Roberts he would not be considered for the position; Henry testified that Roberts "suddenly got very loud" and demanded to know the reasons.  (Doc. 112-2, at 29).  Toward the end of his deposition, Henry testified that Roberts got loud after Henry advised him he would not be considered but was eligible to reapply after six months.[5]  Roberts disputes that he was told he could reapply.

Following the interview, Henry completed a candidate disposition form, which listed options for the interviewer to select as reasons why this candidate would not be considered.  Henry selected "lacked experience/knowledge as indicated by answers to interview questions," and "other," and he specifically noted Roberts's computer skills and customer service experience as the reason.  Henry further wrote on this form that Roberts

---

[4] To the contrary, Roberts could not recall during his deposition any point during the interview when Henry requested he repeat an answer or otherwise indicated that he did not understand Roberts' response to a question.

[5] Thomas testified that although she heard Henry go through the questions, she could not hear Roberts's answers; however, she did hear Roberts raise his voice at the end of the interview.  Thomas did not recall Henry giving any particular reasons for rejecting Roberts as a candidate.

was "very difficult to understand" and had a "heavy accent," and noted that Fowler confirmed his impressions.[6]  (Doc. 112-2, at 72).  Henry testified that he rejected Roberts based on three considerations: Roberts gave a deficient answer to question 3B on the prepared interview questions, regarding how he had dealt with a difficult customer; he was concerned about Roberts's computer skills because he had replied that he was "not versed on maneuvering through the computer;" and Henry was concerned about Roberts's communication skills.  (Doc. 112-2, at 41).

The record shows that in November 2008, West was busy hiring for several training classes at one time.  Henry testified that he and other interviewers were interviewing 10 to 15 persons on a typical day at that time.  According to West's representative, Penny Ann Majeski, and documentary evidence, West hired 1,405 CSRs in Pensacola, Florida, between May 1, 2008 and January 31, 2009.  Fowler testified that she did not know of any Jamaicans who were hired at any time since she began working for West in October 2005.  According to Majeski, West did not hire anyone with problems it identified in Roberts, that is, having weaknesses in customer service skills, computer skills and difficulty communicating clearly.  She identified that the minimum computer skills would require a candidate to be able to identify basic trouble-shooting procedures, such as pressing "control-alt-delete" for a frozen screen; Roberts stated that he would "reboot."  EEOC, however, identified records of West containing interviewer notes and candidate disposition reports reflecting that West had hired candidates despite answers indicating a lack of customer service experience or lack of computer troubleshooting skills, according to the criteria Majeski and Henry described as critical in the decision not to hire Roberts, and showing that other candidates who were rejected for a lack of communication skills were allowed to reapply in six or twelve months.[7]  Roberts stated he was not told he could reapply, and the EEOC presented evidence that one other applicant rejected for poor

---

[6]  Henry testified that Roberts became loud when advised he would not be considered for employment. The EEOC, however, points out that this is not recorded in his notes or the candidate disposition form.  EEOC also notes that Henry did not testify in his deposition that a lack of customer service experience formed part of his decision, though this is written on the candidate disposition form.

[7]  Henry was the interviewer on some of these records but not on any where the candidate was rejected for poor communication skills.

communications skills who likewise received no notation that she could reapply was a candidate reportedly from Puerto Rico.

Following West's rejection of Roberts for the CSR position, he searched for another position by applying for jobs online, checking with other employers, and interviewing for three different jobs.  He worked for Lock Pro doing light roadside assistance work for one month in 2009 but left because they did not pay him.  He also worked as a driver for two weeks in 2010, and has attempted to engage in self-employment as a roadside assistant. Since February 2011, Roberts has worked for Securitas as a security guard, at a rate of pay of $7.50 per hour.

Roberts filed an EEOC discrimination charge against West, asserting discrimination on the basis of his national origin, and the EEOC found reasonable cause to conclude that West violated Title VII in refusing to hire Roberts.[8]  The EEOC filed this suit on September 30, 2010.  West filed a motion for summary final judgment, arguing there is no direct evidence of discrimination and no circumstantial evidence, because it articulated a legitimate business reason for not hiring Roberts.  Also, the EEOC filed a motion for partial summary judgment on West's affirmative defense that Roberts failed to mitigate damages by not seeking comparable positions.

In response to West's motion, the EEOC has proffered the expert witness testimony of Dr. Shurita Thomas-Tate, a speech pathologist and with special knowledge regarding variations of English.  She conducted a speech evaluation of Roberts on February 25, 2011, administering a standard battery of tests, including word level analysis, standardized reading samples, and a conversational language sample.  She also developed and administered a simulated phone task to provide further information.  In her opinion, Roberts's speech intelligibility at the word level, conversational level, and over the telephone is greater than 99%.  Dr. Tate further opined that at the age of 51 and having

---

[8] After receiving the EEOC determination, West requested a discussion with the EEOC and a conference call was held on September 20, 2010.  Majeski filed a declaration stating that during this conference call with EEOC representatives, the EEOC investigator admitted that during the investigation, she and the director had to ask Roberts to repeat information on several occasions, although ultimately, they were able to understand him.  The investigator also admitted that the EEOC had not interviewed anyone at West or any other witnesses prior to making the cause determination.  This declaration is the subject of a motion to strike by the EEOC on grounds of administrative privilege.

been in the United States for over 20 years, his pattern of language usage is stable and would not have changed since his interview with West in 2008 absent professional intervention, which she said he reportedly had not received. She concluded that Roberts's speech and accent pose no barrier to his ability to communicate effectively. West has moved to strike or exclude this expert testimony on grounds that it is not scientifically reliable and that any probative value it may have is outweighed by its prejudicial effect. In support of the motion, West proffered the expert declaration of Dr. Rajka Smiljanic, a linguist, who expresses the opinion that Dr. Tate's testing was inadequate on several grounds. EEOC has moved to strike or exclude Dr. Smiljanic's testimony, arguing that, as a linquist, she is unqualified to express opinions concerning the methods and conclusions of a speech pathologist, such as Dr. Tate, and that Dr. Smiljanic's opinions are not sufficiently reliable.

**Discussion**

Motions to Strike and Objections

Before addressing the pending summary judgment motions, it is necessary to consider the motions to strike and objections to evidence in the record. The objections West has raised to statements of fact and evidence set forth by the EEOC largely consist of additional argument on grounds that the EEOC has mischaracterized testimony or provided incomplete or misleading portions of testimony. The court has set forth above the material facts, taking these objections into consideration as necessary but overruling them for the most part because they relate to the weight or context of the evidence as opposed to its admissibility. The court has viewed the record in the light most favorable to the EEOC on West's motion and in the light most favorable to West on EEOC's motion for partial summary judgment.

As to West's objections to EEOC's exhibits J through GG on grounds of hearsay, authenticity, and lack of personal knowledge, the court concludes for reasons that follow that they should be overruled.[9] Exhibits J through GG consist of West's own records and interviewer notes that it produced in discovery regarding candidates who were hired or

---

[9] West argues that these candidates were not similarly situated to Roberts, however, this argument is not a proper ground on which to exclude the evidence.

rejected. The rule of authentication merely requires the proponent to produce "sufficient evidence to make out a *prima facie* case that the proffered evidence is what it purports to be." *United States v. Caldwell*, 776 F.2d 989, 1001-02 (11th Cir. 1985); Fed. R. Evid. 901(a). While authentication may be accomplished by means of a witness with knowledge, courts also have admitted documents produced during discovery as authentic when offered by the party opponent. *See Slone v. Judd*, No. 8:09cv1175, 2011 WL 1124618, at *2 (M.D. Fla. 2011) ("Documents produced during discovery are deemed authentic when offered by a party opponent." (internal marks omitted)) (unpublished); *Sklar v. Clough*, No. 106cv627, 2007 WL 2049698, at *4 (N.D. Ga. 2007) (same) (unpublished); *see also Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1089 (5th Cir. 1988) (affirming the admission of notes of a corporate employee produced during discovery). EEOC's exhibits J through GG are personnel interview records and notes recorded on the very same form as was used during Roberts's interview, with West's logo, and produced by West during discovery. West has not argued that these notes are not what they purport to be. Also, the court may consider a hearsay statement on summary judgment if the statement could be reduced to an admissible form at trial. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). Thus, the fact that evidence currently may be in an inadmissible form does not prevent consideration of the evidence at summary judgment. The interview notes and candidate disposition forms were written by West's own interviewers, who made hiring decisions on West's behalf, and therefore, they are either business records, *see* Fed. R. Evid. 803(6), or are admissible as statements of a party opponent, made by an agent within the scope of that relationship, and are not hearsay, *see* Fed. R. Evid. 801(d)(2)(D). Some of the statements also are not offered for the truth of the matter asserted.

West and EEOC both seek to exclude their opponent's expert witness. Expert testimony by one who is qualified by knowledge, skill, experience, training, or education, is admissible if scientific or specialized knowledge will help the trier of fact to understand the evidence and if the testimony is based on sufficient facts or data and is the product of reliable principles and methods applied to the facts of the case. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). *Daubert* and Rule 702 impose certain gatekeeping responsibilities on the trial judge with regard to expert evidence

"to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* To this end, the court engages in a three-part inquiry before admitting an expert's opinion, considering (1) whether the expert is qualified to testify regarding the matter; (2) whether the methodology used in reaching the expert's conclusions is sufficiently reliable under a *Daubert* inquiry;[10] and (3) whether the testimony will assist the trier of fact, through scientific, technical, or other specialized expertise, to understand the evidence or to determine a fact in issue. *See Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010); *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003); *see also* Fed. R. Evid. 702. The proponent of the expert testimony "bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each prong." *Hendrix*, 609 F.3d at 1194.

West seeks to exclude the expert opinion testimony of the EEOC's expert witness, Dr. Tate, a speech pathologist who assessed Roberts's speech intelligibility and concluded that his speech and accent pose no barrier to his ability to communicate effectively and that his speech patterns would not have changed since his interview with West absent professional intervention. West argues that Dr. Tate's testimony should be excluded on each of the three prongs relevant to admitting expert opinion testimony – qualifications, methodology, and helpfulness. Although the bulk of the parties' arguments focuses on the first two prongs, the court finds the third prong to be dispositive and that, with the exception of one narrow issue discussed below, expert testimony is not helpful in this case. Therefore, it is not necessary to address the first two prongs at this time, and the court addresses only the third factor, that is, whether the testimony will assist the trier of fact.

---

[10] The *Daubert* factors useful in determining whether expert testimony is reliable include whether a theory or technique can be or has been tested, whether it has been subjected to peer review or publication, whether it has gained widespread acceptance within a relevant community of experts, and consideration of the known or potential rate of error of a technique. *See* 509 U.S. at 593-94. These factors are a nonexhaustive list of potential considerations that may shape the trial judge's flexible Rule 702 inquiry; they are not a "definitive checklist." *Id.* at 594.

The advisory committee notes to Rule 702 describe this as a "common sense inquiry," requiring consideration of "whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Fed. R. Evid. 702 (advisory committee notes) (internal marks omitted). Opinions that are unhelpful are "therefore superfluous and a waste of time." *Id.* (internal marks omitted). "Expert testimony helps the jury 'if it concerns matters that are beyond the understanding of the average lay person.'" *Tardiff v. Geico Indem. Co.*, Slip Op. No. 11-15450, 2012 WL 2924042, at * 2 (11th Cir. Jul. 19, 2012) (quoting *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (*en banc*)) (unpublished).

Consideration of these principles leads to the conclusion that expert testimony on the issue of speech intelligibility is not helpful in this case. Determining whether Roberts's speech was intelligible is the type of common-sense determination that an untrained layman is qualified to make intelligently without the aid of an expert. The ultimate issue here is whether West intentionally discriminated against Roberts or made a legitimate nondiscriminatory business judgment that his speech would be difficult to understand in a telephone customer service conversation. There is no contention that Roberts had a speech disorder of some type that would require expert testimony or specialized knowledge, nor is it necessary to understand the technical peculiarities of a Jamaican accent or speech pattern in order for a layman to determine whether the sound of a person's accent so obstructed the intelligibility of his speech that it was a legitimate reason not to hire him for a CSR position. In other words, whether an accent or culturally distinctive speech pattern is sufficiently intelligible for the average person to understand is a matter squarely within the competency of the average juror.[11]  Therefore, the court

---

[11] The Eleventh Circuit recently reversed a district court's decision to exclude expert testimony on grounds that it was unhelpful in *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190 (11th Cir. 2011), *reh'g en banc denied*, 682 F.3d 1320 (11th Cir. 2012); but the facts of that case are distinguishable.  There, a slip and fall case, the court reversed because the plaintiff's negligence theory (that the defendant failed to choose an adequate flooring surface for a particular area) involved an issue of the slip resistance and surface friction of a particular flooring, which was a proper subject for an expert. *Id.* at 1193.  Here, by contrast, the issue is one of intentional discrimination and whether an accent was difficult to understand, which does not involve a scientific or technical question outside the experience of the jurors.  The dissent from the denial of rehearing *en banc* in *Rosenfeld* characterized the issue in that case as merely requiring a determination of whether the

concludes that Dr. Tate's opinions regarding the issue of speech intelligibility are not admissible, and thus West's motion to exclude this testimony will be granted both for purposes of this summary judgment motion and trial.

The court, however, finds that Dr. Tate's expert opinion that Roberts's speech pattern or accent would not likely have changed in the intervening years since his interview with West is an appropriate subject for expert testimony in this case and would be helpful to the jury. As to this narrow issue, the court must then examine Dr. Tate's qualifications and experience to determine whether she is qualified to offer this opinion. The Eleventh Circuit has explained that these are separate inquiries and emphasized that "'[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702, advisory committee notes, and commenting that admissibility is not "established merely by the *ipse dixit* of an admittedly qualified expert). The court is not in a position to make a final ruling on the admissibility of this narrow opinion on the existing record without a hearing, but finds that a decision on this issue is not necessary to the court's summary judgment ruling.[12] The court reserves ruling on whether Dr. Tate's education and professional experience render her qualified to offer the opinion that Roberts's speech patterns or accent would not have changed during the intervening time period since his interview with West. The parties may submit supplemental briefing on the issue fourteen days prior to the pretrial conference, with any responsive supplemental briefing due no later than seven days prior to the pretrial conference.

---

floor was wet or dry, and concluded that in such a situation, expert testimony was not needed, because where the issue involves "a common sense observation" or "something a typical juror would have known as a matter of everyday life experience," expert testimony typically is not required or allowed. *Rosenfeld*, 682 F.3d at 1331 (Tjoflat, Circuit Judge, dissenting from the denial of rehearing *en banc*). While Judge Tjoflat's dissenting characterization of the fact at issue did not prevail among the circuit judges in that instance, his observations are instructive nonetheless: Where "the analysis lies within common sense . . . expert testimony on the subject will not assist the trier of fact to understand anything more than he already does." *Id.*

[12] As discussed below, material issues of fact exist outside of this issue that require the denial of summary judgment. It is not necessary to consider the expert testimony when ruling on the summary judgment motions.

West designated Dr. Smiljanic as a rebuttal expert, and the EEOC has moved to exclude her testimony. Her report and testimony appear to be limited to rebutting the methodology underlying Dr. Tate's opinions regarding speech intelligibility tests, which the court has excluded; as such, the motion to exclude her testimony will be denied as moot. But, to the extent her testimony is relevant to rebut Dr. Tate's testimony on the narrow issue on which the court has reserved ruling, the court will likewise reserve ruling as to Dr. Smiljanic's expert opinion and will address the issue at the pretrial conference.

Plaintiff moves to strike West's declaration of Penny Majeski, West's Vice President of Employee Relations, who alleged that during a conference call in which she participated with Arlene Gorcey, the EEOC investigator, Gorcey admitted that she and her director had to ask Roberts to repeat information on several occasions during their investigation, but that they ultimately were able to understand him, and that the EEOC had not interviewed anyone at West or any other witnesses prior to making the cause determination. Plaintiff argues that this evidence is inadmissible because the statements were made during the EEOC investigatory or conciliation process, and thus, they are within the scope of the agency's deliberative process privilege or are protected as work product privilege pursuant to EEOC statutory and regulatory protections. West argues that the statements are admissible because they were made voluntarily to a West representative, so any assertion of privilege has been waived and the statements are admissible as statements against interest. West asserts that the statement regarding Roberts being difficult to understand directly contradicts the EEOC's position that Roberts could clearly communicate, and West asserts it has the right to use these voluntarily made statements to rebut any inference the jury may draw that the case is meritorious simply because it is brought by the EEOC after an agency investigation.

For purposes of summary judgment, the court will not consider the EEOC investigator's statements to Majeski. The issue on summary judgment is whether there is direct or sufficient circumstantial evidence of intentional discrimination on the part of West to allow the case to go to the jury. Statements by the EEOC investigator are not probative

of West's intent to discriminate in the hiring process.[13] Therefore, because the court finds this evidence is not relevant to the summary judgment determination, the court will deny the motion to strike the declaration of Penny Majeski as moot at this stage of the proceedings, but the denial is without prejudice to the issue being raised in a motion in limine and addressed prior to trial.

Summary Judgment Standard

When reviewing more than one motion for summary judgment, the court views the facts in the light most favorable to, and draws inferences in favor of, the non-moving party with respect to each motion. *See Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.*

At the summary judgment stage, a court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See Anderson*, 477 U.S. at 249. A genuine issue exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). Although the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, in the light most favorable to the nonmoving party, *see Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993), the court is not obliged to deny summary judgment for the moving party when

---

[13] To the extent this evidence would support the legitimacy of West's nondiscriminatory reason for not hiring Roberts, the EEOC bears the burden of demonstrating pretext at this stage of the proceedings, and the court finds below that there is a question of fact as to pretext. Therefore, summary judgment will be denied without a need to consider this evidence.

the evidence favoring the nonmoving party is "merely colorable" or "is not significantly probative," *Anderson*, 477 U.S. at 249. A mere scintilla of evidence in support of the nonmoving party's position will not suffice to demonstrate a material issue of genuine fact that precludes summary judgment. *See Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

<u>Defendant West's Motion for Summary Judgment</u>

West asserts that the EEOC has failed to present direct or circumstantial evidence of discrimination to survive summary judgment. As the Eleventh Circuit has explained, direct evidence of discrimination is "evidence, which, if believed, proves the existence of a fact in issue without inference or presumption. Evidence that only suggests discrimination, or that is subject to more than one interpretation, does not constitute direct evidence." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (internal marks and citations omitted). In order to constitute direct evidence, the evidence must "reflect[ ] a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Com'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) (internal marks omitted) (finding direct discrimination of age discrimination based on the allegation that an interviewer said he "didn't want to hire any old pilots"). "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race], . . . constitute direct evidence of discrimination." *Id.* (Internal marks omitted). "Evidence that merely suggests a discriminatory motive is, by definition, circumstantial evidence." *Hawthorne v. Baptist Hosp. Inc.*, 448 Fed. Appx. 965, 967 (11th Cir. 2011) (unpublished) (citing *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 (11th Cir. 1997)).

Under Eleventh Circuit precedent, a direct and discriminatory comment on a job applicant's accent can be direct evidence of national origin discrimination. *See Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1347 (11th Cir. 2005) (finding direct evidence where a supervisor turned down a Lebanese plaintiff for a promotion, stating the white co workers were "not going to take orders from you, especially if you have an accent"). On the other hand, relying on authority from other circuits, the Eleventh Circuit has also explained that "an employee's heavy accent or difficulty with spoken English can be a

legitimate basis for adverse employment action where effective communication skills are reasonably related to job performance." *Tseng v. Fla. A&M Univ.*, 380 Fed. Appx. 908, 909 (11th Cir. 2010) (unpublished)[14] (finding remarks by supervisors that a Taiwanese professor's accent was difficult to understand or that he needed to work on his English skills were not direct evidence of discrimination where no disparaging remarks were made about Taiwanese generally and none of the statements specifically referred to Tseng's nationality), *cert. denied*, 131 S. Ct. 2161 (2011); *see also Fragante v. City and Cnty. of Honolulu*, 888 F.2d 591, 596-97 (9th Cir. 1989) ("There is nothing improper about an employer making an honest assessment of the oral communications skills of a candidate for a job when such skills are reasonably related to job performance.") (cited with approval by the Eleventh Circuit in *Tseng*), *cert. denied*, 494 U.S. 1081 (1990). In the present case, as in *Tseng*, although the interviewer, Henry, denied employment in part because of Roberts's "thick accent," there is no indication Henry made any disparaging remarks about Jamaicans and his one comment about Roberts's accent did not explicitly refer to his nationality. In light of the whole context and the job requirements for a CSR, requiring a clear and distinct voice to help resolve customer complaints by telephone, the court finds the EEOC has "failed to identify any 'blatant remarks or actions whose intent could be nothing other than to discriminate." *Tseng*, 380 Fed. Appx. at 910 (internal marks omitted); *see also Van Voorhis*, 512 F.3d at 1300. Thus, the EEOC has not presented direct evidence of discrimination.

Because the comment is subject to more than one interpretation, however, the court must consider whether the plaintiff has created a *prima facie* case of discrimination under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). "The first step of the *McDonnell Douglas* framework requires the plaintiff to make out a case sufficient to withstand a motion for summary judgment (or a motion for judgment as a matter of law) – i.e., a 'prima facie case.'" *Smith v. Lockheed-Martin Corp.*,

---

[14] While unpublished opinions are not considered binding precedent, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000).

644 F.3d 1321, 1325 (11th Cir. 2011); *see also Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). In order to do so, the plaintiff must establish the following four elements: (1) he is a member of a protected class; (2) he applied for and was qualified for the position; (3) despite his qualifications, he was rejected; and (4) the position was filled with an individual outside the class who was equally or less qualified or the position remained open. *See Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999); *Vessels v. Atlanta Indep. Sch.* Sys., 408 F.3d 763, 768 & n.3 (11th Cir. 2005) (also emphasizing that the *McDonnell Douglas* burden-shifting framework is one method of proving discrimination by circumstantial evidence, but not the only method). If the plaintiff establishes a *prima facie* case of discrimination, a rebuttable presumption arises that the employer unlawfully discriminated against him and the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the employment decision. *See Smith*, 644 F.3d at 1325-26. If the employer meets this burden,[15] the plaintiff must present evidence tending to show that the proffered legitimate reason is a mere pretext for unlawful discrimination. *See id.* at 1326. The plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. Cnty. Comm'r of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal marks omitted). With respect to the latter, "the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (internal marks omitted), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)

---

[15] A trier of fact does not have to believe the employer's proffered reason in order to find that the employer has met its burden, "[f]or the burden-of-production determination necessarily *precedes* the credibility-assessment stage." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). Nor is an employer required to persuade the court its reason is "legitimate." *Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). The employer is required only to present evidence which, taken as true, permits a reasonable fact finder to conclude there was a legitimate nondiscriminatory reason for the employment action. *St. Mary's Honor Ctr.*, 509 U.S. at 509; *Cooper*, 390 F.3d at 725.

(*en banc*).  "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004).  Also, the Eleventh Circuit has clearly stated that "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  *Smith*, 644 F.3d at 1328.

It is undisputed for purposes of summary judgment that the plaintiff is in a protected class, was objectively qualified,[16] and suffered an adverse employment action of being rejected for employment.  West argues that the EEOC has not set forth a *prima facie* case of discrimination because there is no evidence that an equally or less qualified applicant outside of his protected class was hired for the position of CSR.  This case presents a close call.  The EEOC has identified candidates who were hired despite showing weakness in answers regarding computer skills and customer service comparable to the weaknesses identified by West in answers given by Roberts.  The EEOC identified four candidates who were rejected for a lack of skills or knowledge as well as communication difficulties, such as being soft spoken.  Unlike Roberts, the candidate disposition forms for these candidates indicate clearly that the candidate could reapply or reinterview within six or twelve months, whereas Roberts claims he was not told this nor is it reflected on the interviewer's notes or his candidate disposition form.  The only other candidate identified as having been rejected for poor communication skills and who, like Roberts, had no notation that the candidate could reapply in six or twelve months, was a candidate who had recently moved to the Unites States from Puerto Rico.  Viewing these facts in the light most favorable to the EEOC, the facts show that the interviewer expressly commented on Roberts's "thick accent" without inviting him to reapply or reinterview when others who were soft spoken but did not have accents appear to have been given this courtesy.  The court finds that the

---

[16] Roberts had a high school diploma and some customer service experience, although his answer to question 3B was disapproved by the interviewer; and he had passed the initial computer screening test, though he told the interviewer he was still learning his way around computers.  West argues that Roberts was not qualified because he did not communicate using a clear and distinct voice, but West acknowledges that this is a subjective consideration, which is not considered at the *prima facie* stage.  *See Vessels*, 408 F.3d at 768-69.

EEOC has set forth a *prima facie* case of discrimination.[17]

West asserts that the refusal to hire Roberts was based on legitimate nondiscriminatory reasons, including that he was difficult to understand and the job required him to speak clearly over the telephone with already frustrated customers, he lacked the requisite computer skills, and he offered a weak answer to the question designed to demonstrate his customer service skills or experience. To survive summary judgment, the EEOC must demonstrate evidence of pretext. The EEOC asserts that a reasonable juror could find the nondiscriminatory reason to be a pretext because West gave false, shifting and inconsistent explanations of its employment decision at various times. Viewing the evidence in the light most favorable to EEOC, the court agrees. Henry and Fowler testified that Henry had to ask Roberts to repeat answers to questions and Fowler had difficulty understanding Roberts, yet Roberts testified that he was never asked to repeat an answer and never before had been told he was difficult to understand. A reasonable juror could find that this explanation was false based on Roberts's testimony and a common-sense evaluation of his speech. Also, West's records reasonably support an inference that Roberts was treated differently than others who were rejected for communication deficits because written comments indicate others were invited to reapply but Roberts, like the applicant from Puerto Rico, was not. The EEOC identified additional inconsistencies as well. Regarding computer skills, West admits Roberts was objectively qualified and determined that his computer skills were adequate through an online test, his computer skills appear to have been comparable to others who were hired, and Henry testified he would not have refused to hire Roberts because of his computer skills alone; yet, a lack of computer skills was referenced as a reason for not hiring Roberts. Regarding customer service experience or skills, Henry said he weighed heavily Roberts's answer regarding how he handled a difficult customer (question 3B), but Majeski, a West representative, stated by deposition that question 3A had been significant, in which Roberts failed to identify a time when he went above and beyond what was expected to

---

[17] Even if these other applicants are not considered sufficiently similarly situated in all relevant respects to give rise to the *McDonnell Douglas* inference, the court finds alternatively that the circumstantial evidence as a whole raises a reasonable inference of discriminatory intent in this case.

offer good customer service.  While the inconsistencies cited by the EEOC appear minor in isolation, the court must view the facts in the light most favorable to the nonmoving party, and when taken together with the totality of the circumstances, most notably the fact that there is a dispute regarding whether Roberts's accent interferes with his ability to be understood clearly and that only Roberts and the Puerto Rican applicant received no notation that they were invited to reapply, the record presents a question of material fact on the issue of pretext.  Admittedly, this case presents a close call factually, "but on summary judgment, close calls go to the non-moving party."  *Russaw v. Barbour Cnty. Bd. of Educ.*, No. 2:11cv611, 2012 WL 3733368, at *11 (M.D. Ala. Aug. 28, 2012).  Therefore, West's motion for summary judgment will be denied.

<u>Plaintiff EEOC's Motion for Partial Summary Judgment</u>

EEOC moves for partial summary judgment on West's first affirmative defense, in which West claims that Roberts failed to mitigate damages.  The EEOC argues it is undisputed that Roberts searched for alternate employment.  West contends that Roberts failed to mitigate damages because he did not seek jobs that were comparable to the CSR position.  Viewing the evidence in the light most favorable to the non-moving party, which in this instance is West, the court concludes that questions of fact exist as to whether the jobs can be considered comparable.  Accordingly, the EEOC's motion for partial summary judgment will be denied.

Accordingly:

1. Plaintiff's motion for partial summary judgment (doc. 100) is DENIED.

2. Defendant's motion for summary judgment (doc. 110) is DENIED.

3. Defendant's motion to exclude the report and testimony of Dr. Shurita Thomas-Tate (doc. 111) is GRANTED, consistent with this order; and Plaintiff's motions to exclude or to strike the Supplemental Declaration of Rajka Smiljanic (docs. 105 & 125) are DENIED as moot, but without prejudice.[18]

---

[18] This order excluding the expert testimony of Dr. Tate applies to her opinions regarding speech intelligibility.  As to the narrow issue on which the court has reserved ruling– that is, whether Roberts's speech pattern or accent would have changed in the intervening period of time – the parties will be permitted to present this issue through supplemental briefing or motions in limine to be addressed at the pretrial hearing.  Likewise, the parties will be permitted to revisit the admissibility of Dr. Smiljanci's testimony at that time to determine the extent to which it is relevant to rebut any portion of Dr. Tate's opinion testimony found to be

4.      Plaintiff's motion to strike the Declaration of Penny Majeski (doc. 123) is DENIED as moot, but without prejudice.

5.      Defendant's objections to Plaintiff's sealed evidence submitted in support of its opposition to Defendant's motion for summary judgment (doc. 128) are overruled, consistent with this order.

6.      Trial and a pretrial conference date will be set by separate order.

7.      The parties may submit motions in limine or supplemental briefing regarding outstanding issues no later than fourteen (14) days prior to the pretrial conference, with any responses or responsive supplemental briefing due no later than seven (7) days thereafter.

**DONE and ORDERED** this 26th day of September, 2012.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

admissible.

Case No. 3:10cv378/MCR/CJK