UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

     Plaintiff,

v.                                                                    Case No. 3:10cv378/MCR/CJK

WEST CUSTOMER MANAGEMENT
GROUP, LLC,

     Defendant.

_____/

## AMENDED REPORT AND RECOMMENDATION[1]

This matter is before the court on referral from the district judge (doc. 281) for a report and recommendation regarding Defendant's Motion for Award of Attorneys' Fees and Nontaxable Expenses (doc. 278). Plaintiff responded in opposition to the motion, defendant submitted a reply, and plaintiff submitted a sur-reply. I also conducted a hearing on the motion. Having carefully considered the motion and responses, as well as counsels' argument, I find that plaintiff's motion should be granted.

This is a Title VII case in which the United States Equal Employment Opportunity Commission ("EEOC") alleged that West Customer Management Group,

---

[1] This Report and Recommendation is identical to the one entered on July 24, 2014 (doc. 306), except for the addition of the Notice to the Parties of their right to file objections within fourteen days of service of the order. The fourteen days shall begin to run from the date the Amended Report and Recommendation is served.

LLC ("West") discriminated against Derrick Roberts based on his national origin, which is Jamaican.  The district judge denied West's motion for summary judgment, and the matter proceeded to trial.  *See E.E.O.C. v. West Customer Mgmt. Group, LLC*, 899 F. Supp. 2d 1241 (N.D. Fla. 2012).  At the conclusion of plaintiff's case-in-chief, West moved for a directed verdict, which the district judge held in abeyance pending the jury's verdict.  The jury returned a verdict for West, finding, in response to the first special interrogatory, that Roberts was not qualified for the customer service representative position for which he applied.[2]  Following the entry of judgment in its favor, West moved for attorneys' fees and non-taxable expenses under Title VII, arguing that the EEOC's lawsuit against it was frivolous, unreasonable, and groundless and that the EEOC continued to litigate after it clearly became so.  The EEOC opposes the motion, insisting that the lawsuit had merit.

Under Title VII, the district court, "in its discretion, may allow the prevailing party, other than the Commission . . . , a reasonable attorney's fee . . . as part of costs." 42 U.S.C. § 2000e-5(k).  "[T]his provision, by its terms, does not distinguish between prevailing plaintiffs and prevailing defendants.  Both may recover." *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510, 516 (4th Cir. 2012) (internal citation omitted).  Judicial gloss, however, has long informed interpretation of the language Congress chose.  Indeed, "the Supreme Court, in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S. Ct. 694, 54 L.Ed.2d 648 (1978), established a different, more stringent standard governing when prevailing defendants may recover as compared to prevailing plaintiffs." *Id.*  "Although attorney's fees are typically

---

[2] After the jury returned its verdict, the district judge granted in part and denied in part as moot West's motion for a directed verdict.

awarded to successful Title VII plaintiffs as a matter of course, prevailing defendants may receive attorney's fees only when the plaintiff's case is 'frivolous, unreasonable, or without foundation'" or the plaintiff continues to litigate after it clearly becomes so.  *Quintana v. Jenne*, 414 F.3d 1306, 1309 (11th Cir. 2005) (quoting *Christiansburg*, 434 U.S. at 421).  The Supreme Court cautioned that "[i]n applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."[3]

---

[3] In *Great Steaks*, the Fourth Circuit explained the discrepancy between the standards for awarding attorneys' fees to prevailing plaintiffs and prevailing defendants under Title VII:

> Th[e] generous standard [toward plaintiffs] effectuates Congress's intent for plaintiffs to serve as "'private attorney[s] general,' vindicating a policy that Congress considered of the highest priority." *Id.* at 416, 98 S.Ct. 694 (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)) (internal quotation marks omitted). It promotes the vigorous enforcement of Title VII by making it easier for plaintiffs of limited means to bring meritorious actions. *Id.* at 420, 98 S.Ct. 694. Furthermore, when a court awards attorneys' fees to a prevailing plaintiff in a Title VII action, it renders this award "against a violator of federal law." *Id.* at 418, 98 S.Ct. 694. These policy considerations, however, do not apply in the context of prevailing defendants, so defendants may not avail themselves of the same generous standard set for prevailing plaintiffs. *See id.*

> Separate policy considerations drove Congress's decision to allow prevailing defendants to recover attorneys' fees. *See id.* at 419–20, 98 S.Ct. 694. Congress desired "to protect defendants from burdensome litigation having no legal or factual basis." *Id.* at 420, 98 S.Ct. 694. Although Congress sought to encourage the vigorous prosecution of meritorious Title VII actions by making it easier to bring them, it also wanted to deter frivolous lawsuits. *See id.*

*Christiansburg*, 434 U.S. at 421–22.[4]

In an effort to further refine the standard for an award of costs under Title VII, the Eleventh Circuit set forth three criteria to be considered when determining whether a claim is frivolous: "'(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits.'" *Quintana*, 414 F.3d at 1309 (quoting *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir. 1985)). "These factors 'are general guidelines only, not hard and fast rules. Determinations regarding frivolity are to be made on a case-by-case basis.'" *Id.* (quoting *Sullivan*, 773 F.2d at 1189). "In reviewing frivolity determinations," the court "view[s] the evidence in the light most favorable to the plaintiff." *Lawver v. Hillcrest Hospice, Inc.*, 300 Fed. Appx. 768, 773 (11th Cir. 2008).

Here, a balancing of the factors weighs in favor of an award of costs to West. First, the EEOC never established a *prima facie* case of discrimination and continued to litigate the case long after it was – or at least should have been – apparent it would not be able to do so. In her order denying West's summary judgment motion, the district judge found that the EEOC's primary evidence – a comment by Steven Henry, one of the decision makers in the case, that Roberts' "thick accent" could upset an

---

[4] In a case expressly disapproved in *Christiansburg*, the Fifth Circuit had stated, in language it believed true to the words of the statute:

> We are unable to read the . . . language as intended by Congress to produce different results depending upon whether the "prevailing party" is the plaintiff or the defendant.  Instead, Congress by plain words rested such awards in the trial court's unfettered discretion.  Had it wished that discretion to be exercised in a biased rather than an impartial manner, it could easily have said so and still can." *United States v. Allegheny-Ludlum Ind., Inc.*, 558 F. 2d 742, 744 (5th Cir. 1977).

angry customer – did not constitute direct evidence of discrimination.  *West*, 899 F. Supp. 2d at 1255.  In so finding, the district judge noted that, in the Eleventh Circuit, "'an employee's heavy accent or difficulty with spoken English can be a legitimate basis for adverse employment action where effective communication skills are reasonably related to job performance.'" *Id.* (quoting *Tseng v. Fla. A&M Univ.*, 380 Fed. Appx. 908, 909 (11th Cir. 2010) (unpublished)).  The district judge also found that because the comment could be interpreted in more than one way, the EEOC had "created a *prima facie* case of discrimination under the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)." *West*, 899 F. Supp. 2d at 1255-57.  The district judge's conclusion in that regard was based, at least in part, on a finding that the EEOC presented sufficient comparator evidence.  Notably, although the district judge found the EEOC's comparator evidence sufficient to avoid summary judgment, she acknowledged that the decision was a "close call."[5]  *Id.* at 1256.

---

[5] The district judge was persuaded by the EEOC's identification of "candidates who were hired despite showing weakness in answers regarding computer skills and customer service comparable to the weaknesses identified by West in answers given by Roberts." *See* doc. 147 at pg. 17.  According to the summary judgment order, "[t]he EEOC identified four candidates who were rejected for a lack of skills or knowledge as well as communication difficulties, such as being soft spoken.  Unlike Roberts, the candidate disposition forms for these candidates indicate clearly that the candidate could reapply or reinterview within six or twelve months, whereas Roberts claims he was not told this nor is it reflected on the interviewer's notes or his candidate disposition form.  The only other candidate identified as having been rejected for poor communication skills and who, like Roberts, had no notation that the candidate could reapply in six or twelve months, was a candidate who had recently moved to the United States from Puerto Rico." *See* doc. 147 at pg. 17.  The district judge concluded that, "[v]iewing these facts in the light most favorable to the EEOC, the facts show that the interviewer expressly commented on Roberts' 'thick accent' without inviting him to reapply or reinterview when others were soft spoken but did not have accents appear to have been given this

Following the court's ruling on summary judgment, the matter was set for trial. Both parties filed motions *in limine*.  Among other things, West sought to exclude the EEOC's evidence of alleged comparators.[6]  West argued that the comparators were not similarly situated to Roberts because they did not have the same "trifecta" of deficiencies as Roberts – an inability to communicate clearly, poor computer skills, and poor customer service skills.  The EEOC apparently conceded the issue, as the district judge stated in her order that after hearing oral argument, it was clear that the parties agreed that no comparator had been identified as having all three deficits observed in Roberts.  *See* doc. 257 at pg. 7.  The district judge also noted that some of the alleged comparators were interviewed by different West employees and that only one possible comparator outside of Roberts' class – the Puerto Rican applicant – was noted as having difficulty communicating.  That applicant, according to the court, "arguably was treated more favorably than Roberts in that West did not reject the applicant outright."  *See* doc. 257 at pg. 7.  The court concluded that "because the crux of th[e] case [was] Roberts' ability or inability to communicate clearly–which [was] the only deficit . . . related to Roberts' protected status and raise[d] an inference of discriminatory intent– only the applicant with a noted deficiency in communication skills and who was not rejected outright [would] be considered sufficiently similar in relevant respects to be a comparator."  At trial, however, the EEOC offered no

___

courtesy."  *See* doc. 147 at pg. 17.

[6] Although not pertinent for purposes of the *prima facie case*, the EEOC sought to exclude a statement by an EEOC investigator during a telephone conference with a West representative that she and her supervisor had to ask Roberts to repeat information on several occasions during the investigation but ultimately were able to understand him. The court found the statement admissible to rebut testimony offered by the EEOC as to Roberts' accent.  *See* doc. 257 at pp. 3-7.

Case No: 3:10cv378/MCR/CJK

evidence regarding the Puerto Rican applicant or any other comparator – according to West, because different decision makers were involved thus rendering the applicant dissimilarly situated to Roberts for Title VII purposes.[7]

Even more to the point concerning the pending determination, an agency publication, identified as the EEOC Compliance Manual, expressly undermined the EEOC's claim against West.  In the manual, which was never disclosed to West or the district judge at the summary judgment stage, the EEOC acknowledges that "[e]mployers sometimes have legitimate business reasons for basing employment decisions on linguistic characteristics."  *See* doc. 278, pg. 39.  The EEOC then explains that "[a]n employment decision based on foreign accent does not violate Title VII if an individual's accent materially interferes with the ability to perform job duties" and that such an "assessment depends upon the specific duties of the position in question and the extent to which the individual's accent affects his or her ability to perform job duties."  *See id.* at pg. 40.  "Positions for which effective oral communication in English may be required include . . . customer service . . . and telemarketing."  *See id.*  As an example of an instance in which a job decision based on accent does not violate Title VII, the Manual describes a hotel concierge who

---

[7] At the hearing on the instant motion, the EEOC acknowledged, for the first time, that it was "hard pressed" to find a comparator in this case.  At the same time, the EEOC continued to suggest that the district judge improperly excluded its comparator evidence.  It appears that the EEOC has never appreciated the fact that none of its alleged comparators was similarly situated to Roberts in all relevant respects, as required under the applicable law, and that such evidence therefore was irrelevant and inadmissible.  *See Brown v. Sch. Bd. of Orange Cnty., Fla.*, No. 11-10819, 2012 WL 613758, at *2 (11th Cir. Feb. 28, 2012) ("To be an adequate comparator, the preferentially treated individual from outside plaintiff's protected class must be similarly situated to the plaintiff in all relevant respects."); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) ("The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer.").

assists guests with directions and travel arrangements but speaks with a heavy Ghanaian accent that has resulted in numerous guest complaints based on an inability to understand him.  *See id.*

The example set forth in the EEOC's Compliance Manual  applies squarely to the facts of this case.  The parties do not dispute that West is in the business of providing customer service through call centers.  They likewise do not dispute that a customer service representative must be able to communicate effectively in English. The undisputed evidence shows that West made the decision not to hire Roberts based largely on Roberts' "thick accent" and concern that it would agitate angry customers.[8]  That Roberts spoke with a heavy accent was confirmed by the EEOC's representatives, who acknowledged that they had difficulty understanding him and had to ask him to repeat himself several times.  It also was confirmed by a former West employee who testified at trial.

The EEOC itself, the foremost expert on issues of employment discrimination, should have known that Henry's comment about Roberts' "thick accent" was not a sufficient basis to sustain a Title VII claim before it filed this suit.[9]  It should have

---

[8] Unlike in the example in the EEOC's Compliance Manual, West referenced only Roberts' accent and not his national origin.

[9] It seems that the EEOC equates accent discrimination with national origin discrimination, which plainly is inconsistent with its own internal guidelines and applicable law.  In fact, despite the district judge's summary judgment ruling, the EEOC continues to maintain that it justifiably believed through the time of trial that Henry's comment regarding Roberts' accent constituted direct evidence of discrimination.  *See, e.g.,* doc. 280 at pg. 15 ("Such statement [regarding Roberts' thick accent] was a direct statement indicating Henry's prejudice against Roberts' accent, and Henry's belief that customers would be prejudiced against Roberts and would become angry because of Roberts' accent. A reasonably jury could have inferred that Henry decided almost immediately to deny Roberts employment because of his national origin or accent, and set out to cover up his discriminatory motive.").  This assertion is somewhat remarkable considering that Henry's expressed view virtually

known that there was no comparator when it received West's discovery responses. At the time she ruled on West's summary judgment motion, the district judge had not been made aware of the EEOC manual and, influenced by the EEOC's litigation stance, was under the impression that the EEOC had proper comparator evidence. Had all of the probative evidence properly been before the district judge at the summary judgment stage, the summary judgment ruling very likely would have been different.  Indeed, even based on the evidence as it was presented to her at the time, the district judge commented repeatedly on the tenuous nature of the EEOC's claim. Having the benefit of all of the evidence in the case, the undersigned finds that the EEOC did not establish a *prima facie* case of discrimination and that it should have been apparent to the EEOC that it would not be able to do so by the end of discovery, at the latest.  The undersigned thus finds that the first factor weighs in favor of an award of costs to West.

Second, to the extent West's offer to settle the case has any significance in the matter, it, too, weighs in West's favor.  According to the Eleventh Circuit, "[i]n the absence of evidence of an offer of a substantial amount in settlement, this factor does not support either party." *Quintana*, 414 F.3d at 1310.  As the EEOC acknowledges, West made a "nominal" settlement offer that did not even address the non-monetary terms proposed by the EEOC, which included a public consent decree.  If anything, such an offer shows that West viewed the EEOC's case as weak.[10]

---

tracked the EEOC's own guidance as set out in the Compliance Manual concerning the very real relationship between direct customer service and an employee's (or potential employee's) difficult accent.

[10] Somewhat related to this factor, and perhaps to West's unwillingness to offer more money, settlement in this case was always doomed by EEOC's insistence upon not just monetary benefit to

Finally, although the case proceeded to trial, this factor is neutral because, as discussed above, the district judge did not have all of the evidence, or an accurate account of the evidence, before her at the summary judgment stage.  *See Scelta v. Delicatessen Support Servs.*, 146 F. Supp. 2d 1255, 1269-70 (M.D. Fla. 2001) ("The consideration of whether there was a pre-trial dismissal or a trial obviously does not cut against the plaintiff, but it also does not significantly militate in her favor. Advancing beyond summary judgment does not establish that a case has merit or immunize a party from attorneys' fees.") (citing *Nielsen v. Trans World Airlines, Inc.*, 95 F.3d 701, 703 (8th Cir.1996); *Flowers v. Jefferson Hospital Ass'n*, 49 F.3d 391, 392–93 (8th Cir. 1995); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993) (allowing a claim to go to trial does not negate the plaintiff's responsibility to litigate a factually grounded claim at trial); *El Shahawy v. Lee*, No. 8:95cv269RWN, 1999 WL 33919538, at *6 (M.D. Fla. April 23, 1999) ("While the fact that a plaintiff's claims survived summary judgment could be relevant in deciding whether to award fees to a defendant in certain cases, such fact would only properly be considered in a case in which the plaintiff's claims easily withstood summary judgment.  But such was not the instant case, in which the Court's summary judgment order expressly warned that Plaintiff's claims survived summary judgment by the narrowest of margins, pointing out the very weak evidentiary basis of his claims.").  Moreover,

---

Mr. Roberts, but also a public consent decree. *See* doc. 278 at pg. 60.  As stated by government counsel in this case, once suit is filed, the EEOC will not settle without a public consent decree and press release.  One wonders whether others have lost a chance at monetary settlement due to the EEOC's need–and policy– to garner trophies.  Such query parallels an observation made by a noted Nobel laureate: "It is indeed probable that more harm and misery have been caused by men determined to use coercion to stamp out a moral evil than by men intent on doing evil."  Friedrich A. Hayek, *The Constitution of Liberty (1960).*

considering the scant evidence of discrimination offered at trial, the fact that the district judge held West's motion for directed verdict in abeyance is of little significance, as most experienced trial judges would do the same in order to avoid creating an issue for appeal.  *See, e.g., Scelta,* 146 F. Supp. 2d at 1260.  In any event, as the Fourth Circuit noted, the denial of a motion for directed verdict does not *ipso facto* establish a case's merit:

> [a]lthough in some instances a frivolous case will be quickly revealed as such, it may sometimes be necessary to blow away the smoke screens the plaintiff had thrown up before the defendants may prevail.  Moreover, it is possible for a plaintiff to establish a prima facie case which is weak but which is sufficient to survive a directed verdict, but which is nonetheless groundless in light of a defense readily apparent to the plaintiff from the outset of the litigation.

*Great Steaks, Inc.*, 667 F.3d at 518 (internal marks and citations omitted); *see also Lee*, 1999 WL 33919538, at *9 ("[T]his Court's proper, considered exercise of its duties and its generosity in allowing Plaintiff's civil rights claims to go to trial, albeit with a stern warning, does not negate the Plaintiff's responsibility to litigate factually grounded claims.").

The undersigned is aware of the asserted public policy reasons for exercising caution when considering an award of attorneys' fees against a plaintiff, as well as the implications of such an award against the EEOC, both of which were addressed in *Christiansburg*. The court also is aware, however, of the impact baseless lawsuits have on employers and businesses, particularly when they are backed by the full force, and seemingly unlimited purse, of the government.  In this case, the EEOC

could produce no evidence that West rejected Roberts based on his national origin. To the contrary, the evidence showed – and the EEOC admitted – that West rejected Roberts based on his accent, which was a legitimate non-discriminatory reason, as recognized in the EEOC manual.  Giving the EEOC the benefit of the doubt and assuming the case was not patently frivolous when filed, the undersigned finds that it became so after West served its discovery responses and the EEOC was not able to identify a single comparator.  At that point, the EEOC's entire case rested on West's alleged shifting explanations for rejecting Roberts, which always included his accent and fell far short of establishing a *prima facie* case of discrimination.[11]  No reasonable jury could have found the evidence in this case sufficient to sustain a Title VII claim, and the EEOC, which is charged with enforcing the nation's employment laws, should have recognized that fact.  Rather than do so, the EEOC continued to press a baseless claim long after it should have been dismissed, imposing upon West years of litigation at enormous expense, both in terms of time and money.  Disallowing attorneys' fees and expenses under the circumstances of this case would constitute a manifest injustice.

For the reasons set forth above, the undersigned finds that the Defendant's Motion for Award of Attorneys' Fees and Nontaxable Expenses (doc. 278) should be granted.  *See Turner v. Sungard Business Sys., Inc.*, 91 F.3d 1418, 1423 (11th Cir. 1996) (noting that the Eleventh Circuit has never "limit[ed] a litigant's duty under *Christiansburg* to the time of filing the complaint" and that the fact that a plaintiff

---

[11] The EEOC acknowledges that Roberts was told at his interview that he would not be hired because of his accent and lack of computer skills.  According to the EEOC, West later added that Roberts lacked the requisite customer service skills and experience. It is undisputed, however, that both decision makers testified that Roberts' accent alone disqualified him from employment.

"may have had a reasonable basis for believing that he had been denied a promotion based on his race when the complaint was filed is insufficient under *Christiansburg*"); *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1558 (11th Cir. 1995) (holding that, "in determining whether a prevailing defendant is entitled to attorney's fees under Title VII, the district court must focus on the question of whether the case is seriously lacking in arguable merit"); *see also EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 593 (6th Cir. 2013) (holding that the district court did not abuse its discretion in awarding attorney's fees from the date the EEOC should have known that it could not prove its claim "to the end of the litigation"); *EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 473 (5th Cir. 2009) (noting that "[t]he EEOC must vigorously enforce the Americans with Disabilities Act and ensure its protections to affected workers, but in doing so, the EEOC owes duties to employers as well: a duty reasonably to investigate charges, a duty to conciliate in good faith, and a duty to cease enforcement attempts after learning that an action lacks merit"); *Scelta*, 146 F. Supp. 2d at 1270 ("[B]y the time of the pre-trial conference . . . , discovery should have been completed and legal theories should have been established. There was no justification from that point on for pursuing the discrimination claims.  Consequently, attorneys' fees and expenses shall be awarded to the defendants from . . . and after . . . the date of the pre-trial conference.").

Accordingly, it is hereby **RECOMMENDED** as follows:

1. That Defendant's Motion for Award of Attorneys' Fees and Nontaxable Expenses (doc. 278) be GRANTED.

2. That West be awarded attorneys' fees and costs from the date it served its last responses to the EEOC's discovery requests through the conclusion of trial.

Case No: 3:10cv378/MCR/CJK

3.      That West be allowed twenty-one (21) days in which to submit materials in support of its claim for attorneys's and nontaxable expenses and that the EEOC be allowed fourteen (14) days thereafter in which to respond.

4.      That the matter be remanded to the undersigned to conduct all further proceedings in the event the parties cannot agree on a reasonable award of costs.

At Pensacola, Florida this 28th day of July, 2014.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).